1

2

3

4

5

6    **UNITED STATES DISTRICT COURT**

7    **EASTERN DISTRICT OF CALIFORNIA**

8

9    MICHELLE HODGE,                           CASE NO. 1:14-CV-584-SMS

10                   Plaintiff,

11          v.                                  ORDER AFFIRMING AGENCY'S
                                                DENIAL OF BENEFITS AND ORDERING
                                                JUDGMENT FOR COMMISSIONER
12   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,

13                   Defendant.                 (Docs. 17, 20)

14

15

16          Plaintiff Michelle Hodge, by her attorneys, Dellert Baird Law Offices, PLLC, seeks

17   judicial review of a final decision of the Commissioner of Social Security ("Commissioner")

18   denying her application for disability insurance benefits pursuant to Title XVI of the Social

19   Security Act (42 U.S.C. § 301 *et seq.*) (the "Act"). The matter is currently before the Court on the

20   parties' cross-briefs, which were submitted, without oral argument, to the Honorable Sandra M.

21   Snyder, United States Magistrate Judge.  Following a review of the complete record and

22   applicable law, this Court finds the decision of the Administrative Law Judge ("ALJ") to be

23   supported by substantial evidence in the record as a whole and based on proper legal standards.

24   **I.**    **Background**

25          A. Procedural History

26          On February 26, 2011, Plaintiff applied for disability insurance benefits.  Plaintiff alleged

27   an onset of disability date of November 18, 2009. The Commissioner initially denied the claims on

28   August 24, 2011, and upon reconsideration again denied the claims on February 6, 2012.  On May

20, 2012, Plaintiff filed a timely request for a hearing.

On September 4, 2012, and represented by counsel, Plaintiff appeared and testified at a hearing presided over by Daniel Heely, Administrative Law Judge ("the ALJ"). See 20 C.F.R. 404.929 et seq. An impartial vocational expert, David M. Dettmer ("the VE"), also appeared and testified.

On September 26, 2012, the ALJ denied Plaintiff's application. The Appeals Council denied review on February 25, 2014. The ALJ's decision thus became the Commissioner's final decision. See 42 U.S.C. § 405(h). On April 22, 2014, Plaintiff filed a complaint seeking this Court's review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

B.  Plaintiff's Testimony

At the administrative hearing, Plaintiff was thirty-seven years old. She had graduated high school and could communicate in English. She lived with her spouse, who did not work due to disability, in Oakdale, California. Plaintiff worked for three years as a housekeeper, but she quit because of mental problems.

Plaintiff testified that going out and dealing with people made her nervous or upset. She was being seen by a doctor and took medications according to the doctor's orders. One of the medications had a negative side effect of seeing spots so she stopped taking it and began taking something else. At the time of the hearing she did not have negative side effects from medication. She did not receive one-on-one counseling from a psychiatrist because her insurance, Medi-Cal, did not provide it. She desired regular mental health appointments, and would "absolutely" go if she had insurance that covered them.

In addition, Plaintiff had severe herniated discs which caused lower back pain, but did not need surgery. She had tried to lose weight to alleviate the pain. At one point she lost 130 pounds. She was a smoker for fifteen years but quit about two weeks before the hearing.

Plaintiff testified that on a normal day she might do light housework, but she had trouble with completing tasks such as cooking and laundry. She would also watch TV for about three or four hours. She did not drive because she did not have a license and did not take public transportation. She relied on her husband for transportation. Plaintiff did not use a computer or go

1   on the internet. She also visited her mother about once a month. Her mother would pick her up and

2   take her to her home in Turlock, California, where they would read the Bible and watch TV.

3   Plaintiff testified that she had problems keeping a schedule and remembering her appointments.

4          C.   Relevant Medical Record

5   *Oak Valley Hospital District*

6          Plaintiff's medical records reveal ongoing treatment at Oak Valley Hospital District for

7   back and shoulder pain, for which she received medication, as well as irregular periods, and dental

8   pain. However, because her physical impairments are not at issue on this appeal, they will not be

9   summarized here.

10         Plaintiff did not receive any one-on-one counseling for mental impairments. She did not

11  see a psychiatrist and it is not clear which. Her records show that she had been prescribed Xanax

12  and Lexapro also from Oak Valley Hospital District, with notes indicating depression-bipolar and

13  anxiety.

14         Medical records from April and July 2009 do not mention mental impairments. In

15  November 2009 Plaintiff was prescribed Xanax. She had been off psychiatric medication for about

16  four years and had been cutting herself. Wellbutrin and Prozac had not been effective previously.

17  She felt anxious about her marriage. A few weeks later she was doing well on Xanax and was

18  prescribed Zoloft. The medical notes indicate that she had been to the Stanislaus Behavioral

19  Center. In January 2010 she stopped Zoloft because of negative side effects and was prescribed

20  Lexapro. She had been cutting. In June 2010, Plaintiff had stopped Lexapro because it did not

21  help, but she continued with Xanax which helped anxiety. Also around June 2010, she had lost a

22  hundred pounds and was feeling better. In October 2010, Plaintiff stated that she was off of

23  Lexapro and Xanax for a month and had begun to hit herself again but was not cutting herself. In

24  February 2011, she reported that she has not needed Xanax much. She reported in May 2011 that

25  she felt Lexapro was working well. In September 2011, she was doing well on Xanax but stopped

26  Lexapro. In October 2011, Plaintiff had been out of Lexapro for several months and felt depressed

27  and had increased anxiety and mood swings. In January 2012, the medical notes say that Lexapro,

28  Zoloft, and Paxil had not helped, but Xanax helped when she was in a rage, and rage was often.

1    She was prescribed Buspar.

2    *Stanislaus Behavioral Health & Recovery Services*

3    In May 2012 and June 2012, Plaintiff was seen by the Brief Crisis Intervention Program at

4    the Stanislaus Behavioral Health & Recovery Services. AR 312. The record does not contain

5    details regarding these visits.

6    *Consultative Examination by Tania Shertock, PhD.*

7    On August 7, 2011, psychologist Tania Shertock, PhD., performed a comprehensive

8    mental status examination and report. AR 255. Dr. Shertock observed that Plaintiff arrived on

9    time, was generally cooperative throughout the session, and appeared to be a reliable historian.

10   Plaintiff reported that she was diagnosed with a panic disorder thirteen years prior, and diagnosed

11   with bipolar disorder about two years prior. Dr. Shertock noted that Plaintiff saw a psychiatrist

12   who prescribed Xanax and Lexapro, but Plaintiff could not remember the name of her psychiatrist.

13   Dr. Shertock observed that Plaintiff was in no obvious distress. She was jumpy and

14   nervous. Her speech, perception, thought content, thought process, sensorium, memory,

15   calculations, abstractions, insight/judgment, general knowledge, and reliability were all normal.

16   Dr. Shertock noted significant impairments in social functioning. Plaintiff described relations with

17   supervisors as generally okay, but poor with coworkers and others. Considering Plaintiff's

18   paranoia, Dr. Shertock predicted that she would have difficulties interacting with others.

19   Dr. Shertock concluded that Plaintiff would be unable to maintain concentration,

20   persistence, and pace due to severe anxiety and moderately impaired concentration, persistence,

21   and pace. She further concluded that Plaintiff could perform simple, repetitive tasks but not on a

22   consistent basis, and could not perform detailed and complex tasks. Plaintiff would have difficulty

23   maintaining a schedule consistently, and may have difficulty adapting to work stress and changes.

24   Plaintiff reported adequately handling some responsibilities of daily living, including keeping

25   appointments.

26   *State Agency Medical Consultants*

27   On August 30, 2011, psychologist Deborah Hartley, PhD., reviewed Plaintiff's record and

28   assessed her functional limitations AR 273. She reviewed Dr. Shertock's evaluation and agreed

1   that Plaintiff had mild limitations performing activities of daily living and moderate limitations in

2   concentration, but found only moderate limitations in maintaining social interaction. Dr. Hartley

3   completed a mental residual functional capacity assessment. AR 277-279. She found that Plaintiff

4   was markedly limited in the ability to understand, remember, and carry out detailed instructions,

5   and in the ability to interact appropriately with the general public. She found that Plaintiff was not

6   significantly limited in any other way. Dr. Hartley specified that Plaintiff could perform simple

7   tasks with routine supervision, could relate to supervisors and peers on a superficial work basis,

8   could not relate to the general public, and could adapt to a work situation.

9          On January 28, 2012, psychologist D. B. Johnson reviewed Plaintiff's medical record and

10  affirmed Dr. Hartley's opinion on reconsideration.

11  *Consultative Examination by Robert L. Morgan, PhD.*

12         On August 6, 2012, psychologist Robert L. Morgan, PhD., performed a comprehensive

13  psychological evaluation. AR 314. Dr. Morgan observed that Plaintiff arrived on time for her

14  evaluation. Plaintiff appeared to be a reliable historian. Dr. Morgan noted that Plaintiff had been in

15  ongoing office appointments with psychiatrist Charles Edwards, M.D., from Stanislaus County

16  Department of Behavioral Health & Recovery Resources for approximately two years, but no

17  records were provided from Dr. Edwards. Plaintiff reported that she had been prescribed a variety

18  of medications by Dr. Edwards and her primary care physician, but was only taking Xanax at the

19  time of the evaluation.

20         Dr. Morgan discussed Plaintiff's medical records including Dr. Shertock's examination

21  and Dr. Hartley's review. Dr. Morgan stated, "Even with report of ongoing psychiatric care and

22  utilization of various psychotropic medications over the course of the last two years Mrs. Hodge

23  reports that her emotional functioning remains unmodulated." AR 316. Plaintiff reported that she

24  was home all day with constant stress, insomnia, and anxiety. She reported strained family and

25  social relationships because she was embarrassed and would "fly off the handle" easily.

26         Dr. Morgan found that Plaintiff presented with a marked impairments in her ability to

27  maintain activities of daily living, in her ability to maintain social functioning, in concentration,

28  persistence, and pace, in her ability to perform activities without interruptions and maintain

1  regular attendance, in her ability to complete a normal work day and work week and perform

2  consistently, and in her ability to interact with coworkers and the public and withstand the stress of

3  a routine workday and deal with changes in the work setting. He noted an episode of emotional

4  deterioration in her last employment and opined that there was a high likelihood that she would

5  emotionally deteriorate in a work setting.

6      D.  Vocational Expert Testimony

7      At the administrative hearing, the VE classified Plaintiff's past work as hospital cleaner

8  (DOT # 323.687-010, medium, SVP 2). The ALJ asked the VE to assume a hypothetical person of

9  the same age, education, and work history as Plaintiff, but who could sit, stand, and walk less than

10  two hours a day; lift and carry less than ten pounds even occasionally; never climb, balance, stoop,

11  kneel, crouch, or crawl; would not have sufficient concentration for simple, routine tasks; and

12  could have less than occasional public contact. The VE opined that there were no fulltime jobs to

13  be found with that profile.

14      The ALJ then directed the VE to assume a hypothetical person of the same age, education,

15  and work history as Plaintiff, and could perform simple, repetitive tasks; could have occasional

16  public contact; could sit, stand, and walk, six hours in an eight-hour day with normal breaks; lift

17  and/or carry fifty pounds occasionally and twenty-five pounds frequently; and could never climb

18  ladders, ropes or scaffolds; but could occasionally climb ramps or stairs. The VE opined that the

19  hypothetical person could perform the hospital cleaner job. The VE further opined that such an

20  individual could perform other unskilled, medium work including hand packager (DOT #

21  920.587-018, medium, SVP 2) and kitchen helper (DOT #318.687-010, medium, SVP 2). The VE

22  testified that there were a significant number of available jobs nationwide and in California.

23      E.  Disability Determination

24      After considering the evidence, the ALJ found that Plaintiff had not engaged in substantial

25  gainful activity since the alleged onset date of disability. He found that Plaintiff had the following

26  severe impairments –mood disorder, anxiety disorder, disorder of the back, and obesity– which

27  significantly limited her ability to perform basic work activities. The ALJ found that Plaintiff did

28  not have an impairment that met or medically equaled the severity of a listed impairment. He

1  found that Plaintiff had the RFC to perform "medium work" as defined in 20 C.F.R. 416.967(c).

2  He found that Plaintiff had the RFC to sit, stand, and walk six hours each out of an eight-hour day

3  with normal breaks, light and carry fifty pounds occasionally and twenty-five pounds frequently.

4  He limited Plaintiff to never climbing ladders, ropes, or scaffolds, but occasionally climb ramps or

5  stairs. He further limited Plaintiff to simple, routine, repetitive tasks and occasional public contact.

6  The ALJ concluded that Plaintiff was capable of performing her past relevant work as a hospital

7  cleaner and that there were other jobs existing in significant numbers in the national economy that

8  Plaintiff could perform. Hence, he determined that Plaintiff was "not disabled."

9  **II.** **Legal Standard**

10  A. The Five-Step Sequential Analysis

11  An individual is considered disabled for purposes of disability benefits if she is unable to

12  engage in any substantial, gainful activity by reason of any medically determinable physical or

13  mental impairment that can be expected to result in death or that has lasted, or can be expected to

14  last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)

15  (3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment(s) must result from

16  anatomical, physiological, or psychological abnormalities that are demonstrable by medically

17  accepted clinical and laboratory diagnostic techniques and must be of such severity that the

18  claimant is not only unable to do her previous work but cannot, considering her age, education,

19  and work experience, engage in any other kind of substantial, gainful work that exists in the

20  national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

21  To encourage uniformity in decision making, the Commissioner has promulgated

22  regulations prescribing a five-step sequential process for evaluating an alleged disability. 20

23  C.F.R. §§ 404.1520 (a)-(f); 416.920 (a)-(f). In the five-step sequential review process, the burden

24  of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five.

25  *See Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If a claimant is found to be disabled or

26  not disabled at any step in the sequence, there is no need to consider subsequent steps. *Id.* at

27  1098–99; 20 C.F.R. §§ 404.1520, 416.920.

28  In the first step of the analysis, the ALJ must determine whether the claimant is currently

engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If not, in the

second step, the ALJ must determine whether the claimant has a severe impairment or a

combination of impairments significantly limiting her from performing basic work activities.  *Id.*

§§ 404.1520(c), 416.920(c).  If so, in the third step, the ALJ must determine whether the claimant

has a severe impairment or combination of impairments that meets or equals the requirements of

the Listing of Impairments, 20 C.F.R. 404, Subpart P, App. 1.  *Id.* §§ 404.1520(d), 416.920(d).  If

not, in the fourth step, the ALJ must determine whether the claimant has sufficient RFC, despite

the impairment or various limitations to perform his past work.  *Id*. §§ 404.1520(f), 416.920(f).  If

not, in step five, the burden shifts to the Commissioner to show that the claimant can perform

other work that exists in significant numbers in the national economy.  *Id*. §§ 404.1520(g),

416.920(g).

      B.  Standard of Review

Congress has provided a limited scope of judicial review of the Commissioner's decision

to deny benefits under the Act.  The record as a whole must be considered, weighing both the

evidence that supports and the evidence that detracts from the Commissioner's decision.

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks

omitted).  In weighing the evidence and making findings, the Commissioner must apply the proper

legal standards.  *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  If an ALJ

applied the proper legal standards and the ALJ's findings are supported by substantial evidence,

this Court must uphold the ALJ's determination that the claimant is not disabled.  *See, e.g., Ukolov

v. Barnhart*, 420 F.3d 1002, 104 (9th Cir. 2005); *see also* 42 U.S.C. § 405(g).  Substantial

evidence means "more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of

Soc. Sec.*, 528 F.3d 1194, 1998 (9th Cir. 2008).  It is "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion."  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir.

2005). Where the evidence as a whole can support either outcome, the Court may not substitute its

judgment for the ALJ's, rather, the ALJ's conclusion must be upheld. *Id*.

**III.    Discussion**

Plaintiff argues that the ALJ improperly rejected the opinions of consultative examining

8

1    psychologists Dr. Tania Shertock and Dr. Robert Morgan. Plaintiff argues that she would have
2    been found disabled if the ALJ had given proper weight to their opinions. In his RFC analysis, the
3    ALJ gave reduced weight to Dr. Shertock and Dr. Morgan's opinions and gave significant weight
4    to the State agency mental consultants.

5         A.  Applicable Law

6         Physicians render two types of opinions in disability cases: (1) medical, clinical opinions
7    regarding the nature of the claimant's impairments and (2) opinions on the claimant's ability to
8    perform work. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). An ALJ is "not bound by
9    an expert medical opinion on the ultimate question of disability." *Tommasetti v. Astrue*, 533 F.3d
10   1035, 1041 (9th Cir. 2008); S.S.R. 96-5p, 1996 SSR LEXIS 2. The ALJ is responsible for
11   resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722
12   (9th Cir. 1998) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)).

13        Three types of physicians may offer opinions in social security cases: "(1) those who
14   treat[ed] the claimant (treating physicians); (2) those who examine[d] but d[id] not treat the
15   claimant (examining physicians); and (3) those who neither examine[d] nor treat[ed] the claimant
16   (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). A treating
17   physician's opinion is generally entitled to more weight than the opinion of a doctor who
18   examined but did not treat the claimant, and an examining physician's opinion is generally entitled
19   to more weight than that of a non-examining physician. *Id*. The Social Security Administration
20   favors the opinion of a treating physician over that of nontreating physicians. 20 C.F.R. §
21   404.1527; *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician is employed to
22   cure and has a greater opportunity to know and observe the patient. *Sprague v. Bowen*, 812 F.2d
23   1226, 1230 (9th Cir. 1987). Nonetheless, a treating physician's opinion is not conclusive as to
24   either a physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747,
25   751 (9th Cir. 1989).

26        Once a court has considered the source of a medical opinion, it considers whether the
27   Commissioner properly rejected a medical opinion by assessing whether (1) contradictory
28   opinions are in the record; and (2) clinical findings support the opinions. The ALJ may reject the

1   uncontradicted opinion of a treating or examining medical physician only for clear and convincing

2   reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 831. The controverted

3   opinion of a treating or examining physician can only be rejected for specific and legitimate

4   reasons supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043

5   (9th Cir. 1995). "Although the contrary opinion of a non-examining medical expert does not alone

6   constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it

7   may constitute substantial evidence when it is consistent with other independent evidence in the

8   record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001), *citing Magallanes*, 881 F.2d

9   at 752. The ALJ must set forth a detailed and thorough factual summary, address conflicting

10   clinical evidence, interpret the evidence and make a finding. *Magallanes*, 881 F.2d at 751-55. The

11   ALJ need not give weight to a conclusory opinion supported by minimal clinical findings. *Meanel*

12   *v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *Magallanes*, 881 F.2d at 751. The ALJ must tie the

13   objective factors or the record as a whole to the opinions and findings that he or she rejects.

14   *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

15       B.   Consultative Examining Psychologist Tania Shertock, PhD.

16       The ALJ gave Dr. Shertock's opinion reduced weight because it was not supported by the

17   objective evidence, including Dr. Shertock's examination. Because Dr. Shertock's examining

18   opinion is contradicted by Dr. Hartley's, the ALJ was required to give specific and legitimate

19   reasons to reject it. Plaintiff argues that the ALJ did not meet this burden.

20       The ALJ discussed how Dr. Shertock's objective findings did not support her highly

21   restrictive functional assessment. First, the ALJ mentioned that Dr. Shertock found that Plaintiff

22   had moderately impaired concentration, persistence, and pace, but there was no objective evidence

23   of problems in this area. Indeed, Dr. Shertock found that Plaintiff's attention and concentration

24   were fair, and Plaintiff had no problems with immediate recall or short-term memory. Plaintiff had

25   put forth adequate effort in the exam, was cooperative, and was a reliable historian. Her ability to

26   calculate was normal. Her memory was grossly intact. Her thought process was logical, organized,

27   and coherent, without loosening of associations, circumstantiality, or tangentiality. These normal

28   objective findings do not support a functional finding of moderate impairment in concentration,

1   persistence, and pace.

2          Dr. Shertock was not sure if Plaintiff could conform to a typical work schedule even

3   though, objectively, Plaintiff was on time to her appointment and reported that she was able to

4   adequately keep appointments. Plaintiff was also on time to her appointment with Dr. Morgan. Dr.

5   Shertock's opinion that plaintiff could not perform simple repetitive tasks on a consistent basis

6   also seems to be unsupported by the objective evidence. Dr. Shertock's evaluation does not

7   indicate any impairment in memory and Plaintiff reported to Dr. Shertock that she was able to

8   adequately handle hygiene and grooming and household duties. Dr. Shertock noted that Plaintiff

9   was jumpy and nervous, and described her own mood as depressed and sometimes manic.

10  However, these observations do not support Dr. Shertock's findings of significant functional

11  limitations.

12         Further, Dr. Shertock incorrectly noted that Plaintiff was seeing a psychiatrist who

13  prescribed Xanax and Lexapro. At the time of the examination, Plaintiff had not seen a

14  psychiatrist, but was prescribed medication by her primary care physician. In addition, the medical

15  notes show that she was not taking Lexapro at the time of Dr. Shertock's examination in spite of

16  previously indicating that she was doing well on Lexapro.

17         Dr. Shertock's assessed functional limitations with regards to concentration, potential

18  inability to conform to a work schedule, and inability to perform simple, repetitive tasks on a

19  consistent basis are not supported by her objective findings, and by the record as a whole. Thus,

20  the ALJ gave specific and legitimate reasons, supported by substantial evidence in the record, in

21  discounting Dr. Shertock's opinion. The remainder of Dr. Shertock's functional assessment is not

22  contradictory to the ALJ's RFC finding. Dr. Shertock said Plaintiff was impaired in social

23  functioning. Her relations with supervisors were generally okay, but poor with coworkers and

24  others. The ALJ limited Plaintiff's public contact to occasional.

25         C.   Consultative Examining Psychologist Robert L. Morgan, PhD.

26          The ALJ gave Dr. Morgan's opinion reduced weight because he relied too heavily on

27  subjective statements, and the mental status examination did not support the reported level of

28  impairment. Plaintiff again argues that the ALJ did not meet his burden to given specific and

1   legitimate reasons to discount Dr. Morgan's opinion.

2   "A physician's opinion of disability 'premised to a large extent upon the claimant's own

3   accounts of his symptoms and limitations' may be disregarded where those complaints have been

4   'properly discounted.'" *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 602 (9th Cir. Or.

5   1999)(*citing Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)).

6   Dr. Morgan relied on several statements from Plaintiff which lack credibility. The ALJ

7   noted that Plaintiff reported to Dr. Morgan that she had a psychiatrist but there was no evidence of

8   this and was inconsistent with Plaintiff's testimony. Dr. Morgan states more than once in his

9   report that Plaintiff was seeing a psychiatrist regularly for two years and with medication, and in

10  spite of this ongoing treatment, Plaintiff's symptoms had not improved. However, Plaintiff

11  testified that she has not received treatment from a psychiatrist, and the medical record does not

12  contain any records or notes from a psychiatrist. The records from the Stanislaus Behavioral

13  Health & Recovery Services, where she was supposedly seeing a psychiatrist, indicate that she

14  was seen there in May and June of 2012, a few months before Dr. Morgan's examination in

15  August 2012. Dr. Morgan noted that psychiatric notes were not available to him for review. Dr.

16  Morgan's opinion is therefore based upon a false premise.

17  Further, Dr. Morgan notes that Plaintiff was taking Xanax, but that is not necessarily the

18  case –Plaintiff was receiving Xanax refills from her primary care physician, but her last visit was

19  in January 2012 and she only took Xanax as needed. Dr. Morgan implies that Plaintiff's use of

20  psychotropic medication was consistent and taken as prescribed, when her records indicate that

21  was not the case. She ran out of medication a few times and stopped taking medication without

22  consulting her doctor.

23  The ALJ also noted that Dr. Morgan's report stated that Plaintiff does no domestic

24  activities, which are exclusively performed by her husband and children, and has no hobbies.

25  Because of these and other things, Dr. Morgan found that she had marked impairment in her

26  ability to maintain activities of daily living. However, Plaintiff's report to Dr. Morgan is

27  inconsistent with her testimony at the hearing and other places in the record. Plaintiff stated at the

28  hearing in September 2012 that she is able to do light housework and microwaving, but that she

would have trouble staying on task with cooking and laundry. She testified that she frequently watched TV and she visited her mother with whom she would watch TV and read the Bible. Her husband wrote in May 2011 in a function report that his wife cooks simple meals, cleans, and does laundry for him and their children, and feeds their dog. He wrote that she does housework and that she is always cleaning something because she panics over clutter. He also wrote that she does puzzles and reads. At that point she took their son to school regularly, but at the time of the hearing their son was able to get to school on his own. Plaintiff also filled out a function report in May 2011 and confirmed that she cooks simple meals daily, cleans, and does laundry for her family and feeds their dog. She also wrote that she tries to do puzzles every day and that she reads. Plaintiff also reported to Dr. Shertock in August 2011 that she was able to adequately handle household duties, but her husband and sons helped. Again, Dr. Morgan's opinion, specifically regarding her impairments regarding activities of daily living, was based on information that is inconsistent with multiple sources in the record.

In addition, there are a few other inaccuracies or mischaracterizations in Dr. Morgan's report. He noted that Plaintiffs husband is self-employed, whereas he is on disability. Plaintiff reported to Dr. Morgan that she did not drive, although she had a driver's license, because it caused too much anxiety. However, she stated at the hearing that she did not have a driver's license which was the reason she did not drive. Dr. Morgan found that Plaintiff's depressive syndrome was characterized by appetite disturbance with a wide fluctuation in weight, referring to her weight loss mid-2010 from about 300 pounds to 170, and subsequent weight gain of about fifty pounds over the following two years. Plaintiff's medical records do not indicate her weight loss was a result of depression or mental impairment. She testified that she lost weight to address her back pain, and medical notes indicate that she felt much better after the weight loss.

The ALJ also found that Dr. Morgan's opinion was not supported by the mental status examination. Specifically, the ALJ found that Dr. Morgan's finding that Plaintiff is markedly impaired in concentration is not supported by his singular test of serial sevens without conducting a test at the lower end, which would demonstrate an ability to perform simple tasks. Dr. Morgan found normal thought processes, thought content, intellectual functioning, and memory.

As a whole, Dr. Morgan's opinion is not supported by the medical record. Plaintiff told Dr. Morgan that she was receiving ongoing treatment from a psychiatrist for two years, a premise stressed by Dr. Morgan over and over in his report. Plaintiff told Dr. Morgan that she could do no household chores, but she reported in her functional report, examination with Dr. Shertock, and at the administrative hearing that she did these things regularly. Dr. Morgan also found that marked impairments in concentration with only her inability to engage in serial sevens as objective support. The ALJ properly gave reduced weight to Dr. Morgan's opinion for being based on subjective statements which were properly discounted, and for being unsupported by the medical record.

D.  <u>State Agency Mental Consultants</u>

The ALJ gave reduced weight to consultative examiners Drs. Shertock and Morgan, while giving significant weight to state agency mental consultants Dr. Hartley and D. B. Johnson. The ALJ properly found that Dr. Hartley's opinion, affirmed by D. B. Johnson, was supported by the objective medical evidence.

The ALJ discussed how objective findings demonstrated difficulty in higher-end cognitive tasks, and did not preclude simple tasks. With regards to anxiety, Plaintiff was able to interact with examiner and her family without noted problems, as well as with her family members. Plaintiff reported good activities of daily living including personal care and caring for her family and pet. The ALJ also noted that Plaintiff had minimal mental treatment, consisting of only medication, with which she was not entirely compliant. Plaintiff did not see a psychiatrist or any psychologist or therapist from the date of disability in 2009 until mid-2012, when she may have seen a mental health professional at the Stanislaus Behavioral Health & Recovery Services. She received psychotropic medications from her doctor, but only saw her doctor approximately once every three months, even after she had received a new medication. There was no treating source opinion and minimal objective findings. There were objective findings of normal understanding, coherency, concentration, speaking, and responding to the examination. Thus, the objective evidence supports Dr. Hartley's opinion that Plaintiff had only mild restriction in activities of daily living and moderate difficulties in maintaining social functioning and concentration.

In sum, the ALJ properly discredited Dr. Shertock's opinion for lack of support in the objective findings and Dr. Morgan's opinion for relying on Plaintiff's subjective statements demonstrated to be inaccurate. He discredited both Drs. Shertock and Morgan's opinions in favor of the contradicting opinions of Dr. Hartley and D. B. Johnson, which he properly found to be supported by the medical evidence. Hence, the ALJ's decision to give reduced weight to Drs. Shertock and Morgan's opinions is without legal error and supported by substantial evidence in the record.

**IV.**   **Conclusion and Order**

For the foregoing reasons, the Court finds that the ALJ applied appropriate legal standards and that substantial credible evidence supported the ALJ's determination that Plaintiff was not disabled.  Accordingly, the Court hereby DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of Court is DIRECTED to enter judgment in favor of the Commissioner and against Plaintiff.

IT IS SO ORDERED.

Dated:   **August 19, 2015**                      **/s/ Sandra M. Snyder**
                                                      UNITED STATES MAGISTRATE JUDGE

15